Good morning. May it please the Court, Stephen Fleischman, Horvitz & Levy, on behalf of the appellant. There are three points I'd like to... Can you please keep your voice up, please? I will try, Your Honor. Thank you. There are three points I'd like to emphasize today. The first is that this case involves a dispute over the word carrier. Whatever this Court concludes carrier means in this case, it means the same thing in the grant of coverage provision as it does in the carrier dishonesty endorsement. Can I ask you... Yeah. So in Schweigert, is that how you say it? I think so. It certainly does seem to support your position, but I don't recall the district court ever addressing that case. Is that because your client never cited it below? That is correct, Your Honor. The Schweigert case itself was not cited. However, we did repeatedly assert the position that it has to be one or the other. It can't be both, which is what the magistrate judge held. Yeah. Well, it would have helped to have been pointed to an Oregon case that says you can't do that. But, I mean, I just couldn't figure out why there was no mention of it, but I just wanted to make sure. I don't have a good answer for you other than we clearly preserved the issue. We're merely citing additional authority. And Schweigert is a rather fundamental principle. It means it stands for the proposition that words used in a contract have the same meaning unless the context clearly provides otherwise. So our view is the carrier dishonesty endorsement controls in this case unless the court were to conclude that the word carrier does not include the thief. If the court were to conclude that, then there's no coverage in the first place. End of story. It's – this is really, frankly, a very simple case. So – You're – at this point, you basically want us to remand for entry of judgment for $50,000, I assume, and elimination of the attorney's fees? That's correct, Your Honor. Obviously, we – you know, as an advocate, I'd like remand for zero. I understand my clients offered the $50,000 from before the time this lawsuit's been filed. So, yes, we're – the answer to your question is we are very – we would be happy with 50 plus a reversal of the attorney's fees. The other two points I want to make, and I'll try to be brief and save my time for rebuttal. These are the ones that you did not raise below? I'm sorry? Are these the points you did not raise below? No. Okay. My other two points is the word carrier, each time it's used, appears in quotation marks. That – that is a strong indication that whatever carrier means, it means the same place in each place it's used. This Court had a similar issue in a case called Tinto v. State Farm. And there the issue was the word section. And in some places, section was capitalized, and in some cases, section was not capitalized. And this Court said, look, there's a difference. It means different things in different places. We don't have that here. What we have is a defined term, which is, of course, the first rule of Oregon law is if there's a defined term, use it. Can I ask one thing, though? I mean, you conceded, I gather, that – sure, the term was defined, but it was really trying to define it to resolve an issue that had nothing to do with this particular one, right? Your Honor, it was defined as motor transportation company. And we think a thief is not a motor transportation company. A thief is not a company. A thief is not engaged in legitimate commercial transaction for consideration, and therefore shouldn't be deemed a company. But if we're wrong on that, and the Court indulges in every inference and finds the word company to be ambiguous and finds that for purposes of coverage it includes the thief, then under the structure of the policy, which I'll get to in a moment, clearly the carrier endorsement of – the carrier dishonesty endorsement would apply and would limit this loss to $50,000. And that's the last point I wanted to get to is just to explain the structure of this policy and how everything fits together. The grant of coverage is on page 67 of the excerpts of record. Coverage is granted for property for which you have arranged transportation with a carrier, in quotes, of the type described in the declarations. You then move to Part B of the policy, which are the exclusions. There's an exclusion for, to be dishonest or criminal acts by any of the following, whether or not acting alone or in collusion with other persons, and two, the carrier or its employees. So you have a grant of coverage while property is in possession of the carrier, and there's an exclusion for dishonest acts of the carrier. If that were the end of the case, or if that was all that was in the policy, then there would be no coverage at all for this loss. But you then turn to the carrier dishonesty endorsement, and it's very clear. We will pay up to $50,000 in any one occurrence for loss or damage to covered property caused by or resulting from fraudulent, dishonest, or criminal act committed by a carrier. So by that provision, the insured purchased $50,000 of coverage, which would otherwise be excluded under B-2. So clearly, the concept of carrier is the same in all three places in the policy, and the magistrate judge committed plain error by concluding carrier meant one thing in one provision and the opposite in the other. Yeah. I mean, let's not cast blame. No. As I said, I imagine if the judge had seen this case you now are relying on, maybe the outcome would have been different. I don't know. Yeah. It's certainly possible. Unless the Court has any questions, I'd like to save my time for rebuttal. Good morning. Dave Paradis, Foreign Transit. Scott Swaggart. And there's an interesting quote here that was kind of left off. It does start, Judge, with the general rule you've been alluding to. Oh, I should try to keep your voice up. Speak into the microphone, please. You look like you have a different printout than mine. So help me find the right page. Pacific 2nd, 626. 282 Pacific 2nd, 626. Okay. And it's head note 5 in mine. We think the Court has warned it under the circumstances, and then it says that rule, and then it says at the bottom, and where its meaning in one instance is clear, that meaning will be attached to it elsewhere in the contract. And the trial court said, I don't know what it means. And so he construed it against the drafter, which is what you're supposed to do. So this isn't bedrock, open and shut. It has to be and where its meaning in one instance is clear, and that's the problem here. It's not clear. There's an ambiguity. Right. But whatever it means, it means the same thing throughout. That's the rule. No, no. And where its meaning is clear. The judge said, I can't tell you what it means. It's not clear. Right. So it doesn't mean the same thing throughout. No, no, no. I don't think you're misreading the case. The general rule is that it's going to mean the same thing throughout, unless there's some indication that the parties intended it to have different meanings in different places. Okay. I don't know how you could argue that here when it's a defined term. Well, let's talk about that. I think you have to define the defined term of any motor transportation company broadly because it says any. And any is an indiscriminate term. It could be anything. Now, you then have to construe the policy under the umbrella of the entire policy. And this is a theft insurance policy. And in the reply, they say it's not. But it is. If you look at what he just read you, AR-67, capital A, coverage, we cover loss, in quotes, to covered property. That's what you and I are talking about. From any of the covered causes of loss. So what are the covered causes of loss? You've got to go back here to page ER-71. Sub 6, specified causes of loss, means and is limited to the following. And it lists a bunch of weather calamities. And in the middle, vandalism, earthquake, flood, theft, or attempted theft. So what's theft mean? Webster's, third international, new international, theft is the unlawful taking of property as by robbery, embezzlement, fraud. That's what happened here. There's coverage for that type of loss. And so you're being asked then to construe terms to eliminate that coverage. Those kind of terms need to be in the exclusion section. I mean, I think the district judge gave your client the benefit of the doubt and said, I'm going to construe this. It is ambiguous as to whether a fraudster was meant to be included within the definition of the term carrier. I'm going to give you the benefit of the doubt. And presumably our court will as well. But then I just don't see how, when it comes time to looking at the exact same term in exclusions, you get around having to be stuck with the same definition. Let me address that. That's excellent. We cited you the cases that analyze fraud by deception theft in the context of the entrustment exclusion. We think that that's the analytical framework you apply in this case of fraud by deception. And you're allowed to do that because covered property means properties of others for which you, in transit, subjective, have arranged transportation with a carrier. They intended to arrange transportation with the real C&A Transport Systems, LLC, and that's the analysis provided in the entrustment exclusion cases. Look at what the insured intended to do. Otherwise, you don't cover theft by deception. If you just say, you know, in reality, we were duped by an imposter to do this, that's fraud in the deception. So when you're defining these terms, you do so in the context in which it's used in the policy, but also in the context of the overall policy that covers fraud by deception. And so if you say you, see, they want to focus on carrier. We want to focus on the phrase for which you have arranged transportation with a carrier. You, in transit, what did they intend to do? They intended to work with the real C&A. They were provided with the federal motor carrier number for the real C&A. They signed a contract on paper with the real C&A. It was signed by the Jerry guy, you know, the imposter. So from their perspective, they're dealing with the real C&A, and the real C&A is a carrier under any normal interpretation of the word. So did the real C&A then steal the load? No. And the honesty, the dishonesty exclusion talks about the carrier. So here we go. Let's see. It's on ER-72. Right, so what it's talking about is the same carrier that you supposedly arranged for transportation with that triggered coverage in the first place. The one we intended to deal with. Right. You would be out of luck if we construed the policy in that fashion, because you, in fact, you didn't arrange with the real C&A. So we're giving you the benefit of the doubt by saying we're going to sweep in this fraudster, and we're going to treat that person as the carrier, but then when you get to this provision that you're just about to focus on, it's talking about the same carrier that we were talking about for coverage purposes. It is the carrier, so it relates back. So unless you find that you analyze it under the fraud by deceit entrustment exclusion and are allowed to look at it in transit's intent of what they thought they were doing, you're right. So that's why we say that's the cases you should analyze. Every one of them talks about why the policy covers this is because theft by deception is not expressly excluded in the exclusions. So you're right. I mean, I have to have you look at the policy and say they intended to deal with the real C&A, that's a carrier, and the real C&A didn't steal the goods, so you get the full coverage, because that's what carries through the intent of covering theft by deception, and it doesn't take it away over here in the left hand vaguely with terms nobody can agree on what they mean. And I think also the judge, I think you do construe against the insurance company, and when they put forth two different definitions post loss in the letter and in the lawsuit, that's evidence of an ambiguity, and you can construe that in favor of the insured, wherever it appears in the policy, I think. Just a little louder, please. Sure. That once you find an ambiguity, you can construe that against the insurance company wherever it appears in the policy, because the judge here wasn't able to give a plain, a clear meaning to that term due to the ambiguity. It can mean a lot of different things. And so we think you are allowed to apply the construe against the insured rule in both the coverage section and the exclusion. Thanks. Okay. Your Honor, I couldn't have said it better myself. Whatever carrier means, it means the same in both places. The only conceivable way the carrier dishonesty endorsement does not apply in this case is if the court were to find the thief is not a carrier, in which case there's no coverage. A little louder. I apologize, Your Honor. The only way this court could find the carrier dishonesty endorsement does not apply would it be if the court were to find that the thief is not a carrier, in which case there's no coverage at all. That is the holding of Schweikert. Schweikert was defining the word benefits, which was in the grant of coverage and in the exclusion. The court cited the rule about construing policies against insurance companies when they're ambiguous. The court said whatever benefit means in one place, it means in the other place. As for the entrustment exclusion, we made a strategic decision not to raise that on appeal. I'd be happy to submit a supplemental briefing. That doesn't appear to be necessary. We're simply not relying on that. But to address the point, if the real CNA had shown up and their driver decided to take this load of stuff to Las Vegas and have a good weekend with it, that's where the carrier dishonesty endorsement applies. He'd be an employee of the carrier, and there was a dishonest act involved. Their position's been they get six times as much coverage because they were duped all along instead. That just doesn't make any sense. And unless the Court has any questions, I'll be happy to submit. Okay. Thank you, counsel. We appreciate your arguments. Interesting case. The matter is submitted at this time. And that ends our session for today.
judges: PREGERSON, PAEZ, WATFORD